**UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA**

Reginald D. Owens and Carolyn D. Owens,
individually, and on behalf of all others
similarly situated,

                Plaintiffs,

                                    Civ. No. 07-4741 (RHK/AJB)
                                    **MEMORANDUM OPINION
                                    AND ORDER**

v.

Hellmuth & Johnson, PLLC,

                Defendant.

Michael G. Phillips, Law Office of Michael G. Phillips, Minneapolis, Minnesota, Thomas J. Lyons, Jr., Consumer Justice Center, P.A., Vadnais Heights, Minnesota, Thomas J. Lyons, Lyons Law Firm, P.A., Vadnais Heights, Minnesota, for Plaintiffs.

Barry A. O'Neil, Kay Nord Hunt, Bryan R. Feldhaus, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, Minnesota, for Defendant.

**INTRODUCTION**

This action arises out of a debt-collection letter received by Plaintiffs Reginald D. Owens and Carolyn D. Owens from a law firm, Defendant Hellmuth & Johnson, PLLC ("H&J"), in December 2006. Plaintiffs allege that the letter violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA"). H&J now moves to dismiss, arguing that the letter did not contravene the statute; Plaintiffs argue the opposite and seek summary judgment as to liability. For the reasons set forth below, the Court will deny H&J's Motion and grant Plaintiffs' Motion.

## BACKGROUND

The relevant facts in this case are undisputed. Plaintiffs became delinquent on dues owed to the Winnetka Green Master Association, the homeowners' association that manages the development in which their townhome is located. On December 4, 2006, H&J sent Plaintiffs a letter, which is attached to the Complaint as Exhibit 1. The letter states, in pertinent part:

> The above-captioned law firm has been retained by the Winnetka Green Master Association ("Association") to collect an amount receivable from you in the amount of $814.68, plus costs of collection and reasonable attorneys' fees, to date in the amount provided below.
>
> Unless you notify this office within thirty (30) days after receiving this notice that you dispute the validity of the debt or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty (30) days from receiving this notice that you dispute this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of the judgment and mail you a copy of such judgment, if any, or verification. If you so request from this office, in writing, within thirty (30) days of receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.
>
> This letter and any related communications are attempts to collect a debt, and any information obtained will be used for that purpose.
>
> As authorized by the Association's government documents, the Association has a strict policy of assessing all costs of collection and attorneys' fees to past due home owners. Therefore, the costs of consulting the Association on this matter and preparing this letter have been added to your balance. To date, those costs amount to $100.00. Please add this amount to your balance owing and remit the entire amount to the above captioned law office. In the event that further legal action becomes necessary, you will be required to pay any and all legal costs associated therewith.
>
> As of the date of this letter, you owe $914.68. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence if you pay the amount shown

above, an adjustment may be necessary after we receive your payment, in which case we will inform you before depositing the check for collection. For further information, please contact the undersigned.

### NOTICE OF ACCELERATION OF ANNUAL ASSESSMENT

Please be advised that your Association levies annual assessments as more fully described in the Association's Declaration and Bylaws. If your past due balance is not paid within thirty (30) days as provided below, your entire annual association assessment may become immediately due and payable. In the event legal proceedings are commenced, the Association's claim may be increased to include any and all accelerated installment amounts.

On behalf of our client, DEMAND IS HEREBY MADE that you **remit to this office** the sum of no less than $814.68, plus costs and attorneys' fees in the amount of $100.00, **payable either by cash or certified check to the Winnetka Green Master Association**, within thirty (30) days from the date of this letter. Please be advised that if such remittance is not received within the aforesaid time period, legal proceedings may be commenced against you to collect this outstanding amount.

Plaintiffs allege that the letter violated the FDCPA because the demand for payment within 30 days of the *date* of the letter overshadows and contradicts their right under the FDCPA to dispute the debt within 30 days of *receipt* of the letter. H&J disagrees and argues that the letter did not violate the statute. The matter is now ripe for decision.

### STANDARD OF DECISION

H&J has moved to dismiss under Federal Rule of Civil Procedure 12(b)(6), while Plaintiffs have moved for summary judgment under Federal Rule of Civil Procedure 56. Accordingly, the Court sets forth below the standard for evaluating each Motion.

The recent Supreme Court case of Bell Atlantic Co. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), sets forth the standard to be applied when evaluating a motion to

dismiss under Rule 12(b)(6). To avoid dismissal, a complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. at 1974. Stated differently, a plaintiff must plead sufficient facts "to provide the 'grounds' of his 'entitle[ment] to relief,' [which] requires more than labels and conclusions, and [for which] a formulaic recitation of the elements of a cause of action will not do." Id. at 1964-65 (citation omitted). Thus, a complaint cannot simply "le[ave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." Id. at 1968 (citation omitted). Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." Id. at 1974.

When reviewing a motion to dismiss, the complaint must be liberally construed, assuming the facts alleged therein as true and drawing all reasonable inferences from those facts in the plaintiff's favor. Id. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of its factual allegations. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss "'even if it appears that a recovery is very remote and unlikely.'" Id. at 1965 (citation omitted).

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Celotex, 477 U.S. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must

view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

**I.    The FDCPA**

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e).  It is a broad remedial statute that imposes strict liability on debt collectors; its terms are to be applied "in a liberal manner."  Picht v. Hawks, 77 F. Supp. 2d 1041, 1043 (D. Minn. 1999) (Noel, M.J.), aff'd, 236 F.3d 446 (8th Cir. 2001).  Among the many provisions in the statute designed to protect debtors is the "validation" requirement found in 15 U.S.C. § 1692g.  Intended to address "the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid," S. Rep. No. 95-382, at 4 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1699,[1] that section

---

[1] "Dun" means to demand payment from a delinquent debtor.  Black's Law Dictionary 502 (6th ed. 1990).  Debt-collection letters, therefore, are frequently referred to as "dunning letters."

gives debtors the right to dispute a debt and seek verification of the validity thereof within 30 days of receipt of a debt-collection letter. 15 U.S.C. § 1692g(b). If the debtor opts to exercise these rights, "the debt collector shall cease collection of the debt" until verification is obtained and a copy thereof has been mailed to the debtor. Id.

Importantly, the FDCPA "does not assume that the recipient of a collection letter is aware of h[is] right to require verification of the debt." Jacobson v. Healthcare Fin. Servs., Inc., 516 F.3d 85, 90 (2d Cir. 2008). Instead, the statute requires the debt collector to inform the debtor of his rights by sending him a "validation notice" with the initial dunning letter (or within 5 days thereafter). 15 U.S.C. § 1692g(a). The validation notice must contain (1) the amount of the debt, (2) the name of the creditor to whom the debt is owed, (3) a statement indicating that, unless the debtor disputes the validity of the debt within 30 days of receiving the letter, the debt will be presumed valid, (4) a statement indicating that, if the debtor notifies the debt collector in writing within 30 days of receiving the letter that the debt is disputed, the debt collector will obtain verification of the debt and mail a copy of the verification to the debtor, and (5) a statement indicating that, if requested by the debtor within 30 days of receiving the letter, the debt collector will provide the debtor with the name and address of the original creditor, if different from the current creditor. Id.

However, "[i]t is not enough for a debt collection agency simply to include the proper debt validation notice in a mailing to a consumer – Congress intended that such notice be clearly conveyed." Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996) (citing Swanson v. S. Or. Credit Serv., Inc., 869 F.2d 1222, 1225 (9th Cir. 1988)); accord

Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3rd Cir. 2000); Miller v. Payco-Gen. Am. Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991).  Accordingly, a debt collector violates the FDCPA even if it includes an accurate validation notice in a dunning letter, if the notice is "overshadowed" or contradicted by other language in the letter.  15 U.S.C. § 1692g(b) (2006); Jacobson, 516 F.3d at 90.[2]  This occurs when a debt-collection letter conveys information "in a confusing or contradictory fashion so as to cloud the required message with uncertainty."  DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2d Cir. 2001); accord Peter v. GC Servs. L.P., 310 F.3d 344, 348-49 (5th Cir. 2002) (FDCPA requires validation notice to be "set forth in a form and within a context that does not distort or obfuscate its meaning"); Marshall-Mosby v. Corporate Receivables, Inc., 205 F.3d 323, 326 (7th Cir. 2000) (debt-collection letter violates FDCPA where it is confusing as to debtor's rights).  Whether a dunning letter violates the statute in such a fashion is analyzed from the vantage point of an "unsophisticated consumer," Freyermuth v. Credit Bureau Servs., Inc., 248 F.3d 767, 771 (8th Cir. 2001), a standard designed to "protect consumers of below average sophistication or intelligence without having the standard tied to 'the very last rung on the sophistication ladder,'" Duffy v. Landberg, 215 F.3d 871, 874 (8th Cir. 2000) (citations omitted).[3]

---

[2] Prior to 2006, nothing in the FDCPA expressly precluded language in a debt-collection letter from overshadowing or contradicting a validation notice; courts had grafted such a requirement onto the statute.  However, Congress adopted this judicial gloss when it amended the FDCPA as part of the Financial Services Regulatory Relief Act of 2006, Pub. L. No. 109-351, § 802(c), 120 Stat. 1966, 2006-07 (2006).

[3] Courts in other Circuits use a "least-sophisticated-consumer" standard, but the difference between these two standards is "*de minimis* at most."  Peter, 310 F.3d at 348 n.1.

There is a split of authority as to who makes the determination whether language in a debt-collection letter is overshadowing or contradictory. The Seventh Circuit has held that such a determination is a question of fact that cannot be resolved on a motion to dismiss. See, e.g., Marshall-Mosby, 205 F.3d at 326. However, several other courts have held that this is a question of law for the court. See, e.g., Wilson, 225 F.3d at 353 n.2; Terran v. Kaplan, 109 F.3d 1428, 1432 (9th Cir. 1997); Russell, 74 F.3d at 35; Rachoza v. Gallas & Schultz, No. Civ. A. 97-2264, 1998 WL 171280, at *4 (D. Kan. Mar. 23, 1998); Martinez v. Law Offices of David J. Stern, P.A. (In re Martinez), 266 B.R. 523, 533 (Bankr. S.D. Fla. 2001). The Court agrees with the latter cases and holds that the issue is for the Court to decide and, hence, is appropriate for resolution at this juncture.

## II.     Application of the FDCPA here

### A.     H&J is a "debt collector"

In order to establish a violation of the FDCPA, Plaintiffs must, as a threshold matter, demonstrate that H&J is a "debt collector." See Chomilo v. Shapiro, Nordmeyer & Zielke, LLP, Civ. No. 06-3103, 2007 WL 2695795, at *2 (D. Minn. Sept. 12, 2007) (Kyle, J.).[4] The statute defines the term "debt collector" as "any person who . . . regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). However, the statute goes on to say that "[f]or the purpose of section 1692f(6) of this title, ['debt collector'] also

---

[4] Plaintiffs must also establish that the money owed to their townhome association was a "debt" under the FDCPA. Although it stops short of arguing the point, H&J suggests that Plaintiffs' association dues were not a "debt" under the statute. (See Def. Reply at 10 n.2.) While two Florida courts have concluded that condominium assessments are not "debts" for purposes of the FDCPA (see id. (citing cases)), the Court agrees with Newman v. Boehm, Pearlstein & Bright, Ltd., 119 F.3d 477, 480-82 (7th Cir. 1997), that such assessments do, in fact, qualify as "debts" under the statute. (See also Pl. Reply at 4-5 (collecting cases).)

8

includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is *the enforcement of security interests*." Id. (emphasis added).

As the undersigned noted in Chomilo, this confusing language has led to "a split of authority . . . whether enforcers of security interests are 'debt collectors' for purposes of section 1692f(6) only, or whether they are subject to the entire FDCPA if they meet the general definition of a 'debt collector' of section 1692a(6)." 2007 WL 2695795, at *3. Relying upon Chomilo, H&J argues that it is not a "debt collector" because the debt at issue here created a lien upon Plaintiffs' townhome under Minnesota law.[5] Accordingly, it asserts that because the purpose of the letter it sent to Plaintiffs "was the enforcement of [the] lien . . ., [it] was an enforcer of a security interest that was subject only to section 1692f(6) of the FDCPA." (Reply at 3.) This argument is unpersuasive.[6]

The letter H&J sent to Plaintiffs was nothing more than an attempt to collect Plaintiffs' delinquent homeowner-association dues. The letter made no reference to the fact that the delinquency created a lien under Minnesota law. Nor did the letter refer to the association's right to foreclose that lien, or in any way threaten foreclosure in the absence of payment. In sum, the letter was concerned only with the underlying debt, and

---

[5] H&J nowhere disputes that it otherwise meets the definition of "debt collector" under the Act – in other words, it has conceded that it "regularly . . . attempts to collect . . . debts" owed to others.

[6] It is noteworthy that H&J did not raise this argument in its moving brief and instead asserted it for the first time in its Reply. H&J suggests that the argument became ripe only when Plaintiffs "cross"-moved for summary judgment, since the argument is predicated on a fact, namely, "that the debt that is the subject of the December 4, 2006 letter was, in fact, an assessment . . . on Plaintiffs' townhome." (Reply at 2.) Yet, Plaintiffs admitted this "fact" in their Complaint. (See Compl. ¶ 5.) Accordingly, H&J could have (and should have) raised this argument when it moved to dismiss.

9

not the security interest created thereby. Under these facts, H&J's actions cannot fairly be construed as "enforcement" of the security interest created by the statutory lien.

In essence, H&J argues that whenever a lien is *subject* to foreclosure, any attempt to collect the debt creating the lien must be "enforcement" of the corresponding security interest.[7] The Court does not believe that such a broad reading of the word "enforcement" is consistent with its definition, see <u>Black's Law Dictionary</u> 528 (6th ed. 1990) (defining "enforcement" as "[t]he act of putting something such as a law into effect; the execution of a law; the carrying out of a mandate or command"), or comports with the broad remedial purposes of the FDCPA. To accept H&J's argument would mean that any step in the process of collecting a secured debt, even when unaccompanied by efforts to dispossess the debtor of the property secured thereby, would render the collector beyond the statute's ambit. In no reasonable sense can such actions be considered "enforcement" of a security interest; rather, they concern only the separate underlying debt.

<u>Chomilo</u> and the cases cited therein are consistent with this reading of the statute. In <u>Chomilo</u>, the alleged "debt collector" had instituted a non-judicial foreclosure of the mortgage on the plaintiff's home and purportedly violated the statute when it published a required notice of mortgage foreclosure under Minnesota law. 2007 WL 2695795, at *1. Similarly, in <u>Jordan v. Kent Recovery Services, Inc.</u>, 731 F. Supp. 652, 655 (D. Del. 1990), the defendant sent an allegedly unlawful letter to the plaintiff while trying to

---

[7] Indeed, at oral argument H&J took the position that a debt-collection letter "relating to" a lien necessarily involves "enforcement" of that lien.

repossess an automobile.  The other cases cited in Chomilo are similar.  See Montgomery v. Huntington Bank, 346 F.3d 693, 700-01 (6th Cir. 2003) (repossession of automobile); Barbatini v. Quality Loan Serv. Corp., No. CV-06-0065-EFS, 2007 WL 26775, at *3 (E.D. Wash. Jan. 3, 2007) (foreclosure of trust deed); Beadle v. Haughey, No. Civ. 04-272-SM, 2005 WL 300060, at *1 (D.N.H. Feb. 9, 2005) (foreclosure of mortgage); Rosado v. Taylor, 324 F. Supp. 2d 917, 924 (N.D. Ind. 2004) (same); Hulse v. Ocwen Fed. Bank, FSB, 195 F. Supp. 2d 1188, 1204 (D. Or. 2002) (foreclosure of trust deed).  In each case, the defendant was doing more than simply trying to collect a debt; it was actively engaged in an attempt to dispossess the plaintiff of secured property.  Such actions are fairly regarded as "enforcement" of security interests.  The same is not true here, where H&J did nothing more than attempt to collect the debt giving rise to the lien on Plaintiffs' townhome.

For these reasons, the Court rejects H&J's argument and concludes that it was a "debt collector" subject to all of the provisions of the FDCPA when it sent the letter in question.

**B.     H&J's letter violated the FDCPA as a matter of law**

There is no dispute that the second paragraph of H&J's letter contained the validation notice required by 15 U.S.C. § 1692g(a).  Plaintiffs argue, however, that the validation notice was contradicted and/or overshadowed by the letter's later language advising them that "they must pay the alleged debt within 30 days of the *date* of the letter to avoid . . . the acceleration of the annual assessment," because under the FDCPA they had "30 days from their *receipt* of the [l]etter to dispute the debt."  (Pl. Mem. at 11-12

11

(emphases in original).)  Since Plaintiffs did not receive the letter on the same day it was mailed,[8] they assert that, in order to comply with H&J's demand, they "would have to pay within 29 days or less, depending on when H&J mailed the [l]etter and how long it took the [l]etter to reach [them], which is less than the 30-day period provided by § 1692g of the FDCPA."  (Id. at 12.)  Hence, "the unsophisticated consumer is left to wonder whether he actually has 30 days after his receipt of the [l]etter to dispute the alleged debt, or whether he must pay within 30 days from the date of the [l]etter to avoid additional charges."  (Id. at 13.)  The Court agrees.

The facts of this case are nearly indistinguishable from Bishop v. Global Payments Check Recovery Services, Inc., Civ. No. 03-1018, 2003 WL 21497513 (D. Minn. June 25, 2003) (Magnuson, J.).  In Bishop, the plaintiff received a dunning letter with a proper validation notice, but which also contained language indicating that the plaintiff would face additional penalties if he did not pay the debt within 30 days of the date of the letter.  The defendant moved to dismiss, arguing that the demand for payment did not overshadow the validation notice.  The Court rejected the defendant's argument:

> Global's letter tells Mr. Bishop that if he does not pay the debt within 30 days from the date of the letter he may face civil and criminal penalties.  It also tells him that he can contest the validity of the debt within 30 days from receipt of the letter.  As . . . Judge Posner stated in Bartlett [v. Heibl, 128 F.3d 497, 501 (7th Cir. 1997)], "[t]his leaves up in the air what happens if he is [penalized] on the [30th day after the date of the letter], say, and disputes the debt on the [30th day after he receives the letter].  He might well wonder what good it would do him to dispute the debt if he can't stave off [the penalties]."  Id. at 501.

---

[8] Although counsel asserts that Plaintiffs did not receive the letter on the same day it was mailed, there is nothing in the record to support that assertion.  (See Pl. Mem. at 12.)  Nevertheless, Defendants have not challenged that assertion, and the Court may presume that the letter was received on a date different from its mailing.  See Baldwin County Welcome Ctr. v. Brown, 466 U.S. 147, 148 n.1 (1984) (letter presumed received three days after mailing).

Id. at *3.

Bishop is not an aberration; other courts have also held that a dunning letter demanding payment within 30 days of the date thereof violates the statute and overshadows or contradicts a proper validation notice. For example, in Swift v. Maximus, Inc., No. 04-CV-216, 2004 WL 1576618 (E.D.N.Y. July 15, 2004), the defendant had sent the plaintiff a dunning letter stating "[p]ayment in full of this debt must be received within 30 days after the date of this notice to avoid further collection activities." Id. at *1. Additional language then directed the plaintiff to the back of the letter, which contained a proper validation notice. The Swift court held that the letter violated Section 1692g because of the conflict between the validation notice and the demand for payment within 30 days of the date of the letter. Id. at *4-5 ("The letter clearly states 'after the date of this notice.' This directly contradicts the language of the validation notice, and a consumer of average sophistication . . . may be confused by the statement[]."); see also Chauncey v. JDR Recovery Corp., 118 F.3d 516, 519 (7th Cir. 1997) (dunning letter requiring payment to be *received* by debt collector within 30 days violated FDCPA because it "require[d] plaintiff to mail the payment prior to the thirtieth day to comply"); Larsen v. JBC Legal Group, P.C., 533 F. Supp. 2d 290, 306 (E.D.N.Y. 2008); Turner v. Shenandoah Legal Group, P.C., No 3:06CV045, 2006 WL 1685698, at *6 (E.D. Va. June 12, 2006) (Report and Recommendation of Dohnal, M.J.); but see Fuller v. Becker & Poliakoff, P.A., 192 F. Supp. 2d 1361, 1370-71 (M.D. Fla. 2002).

The same result must obtain here. H&J's letter advised Plaintiffs of their right to contest the debt within 30 days of *receipt* of the letter, but later stated that their entire annual assessment might be accelerated if they did not pay within 30 days of the *date* of the letter. As in the cases set forth above, the Court determines that the letter would leave an unsophisticated consumer uncertain as to his rights. Simply put, "the juxtaposition of two inconsistent statements" in the letter – the demand for payment (under the threat of added penalties) within 30 days from the *date* of the letter on one hand, and the validation notice informing Plaintiffs of the right to dispute the debt within 30 days of *receipt* of the letter on the other hand – runs afoul of 15 U.S.C. § 1692g. Graziano v. Harrison, 950 F.2d 107, 111 (3rd Cir. 1991). Accordingly, the Court concludes that the letter violated the FDCPA.[9]

H&J raises several arguments in an attempt to avoid liability, but none is persuasive. It first argues that its demand for payment within 30 days of the date of the letter was not overshadowing because the threatened consequences of failing to pay were not inexorable. (See Def. Mem. at 9 ("Defendant's . . . demand for payment only informs Plaintiffs [that] 'legal proceedings may be commenced against you,' not that such proceedings will be commenced.").) In the Court's view, the letter's use of the word

---

[9] In its Reply, H&J cites Jones v. CBE Group, Inc., 215 F.R.D. 558 (D. Minn. 2003) (Doty, J.), to argue that the letter did not contravene the FDCPA (see Reply at 5-6), but the Court declines to follow Jones for several reasons. First, the analysis of the dunning letter in Jones was dicta, coming after the Court had already concluded that the action was moot due to the defendant's offer of judgment under Federal Rule of Civil Procedure 68. Second, Jones is at odds with Bishop and the other authority cited above, which the Court finds persuasive. Third, the "threats" contained in the dunning letters in Jones were immediately followed by language indicating that adverse consequences could be avoided by disputing the debt, see 215 F.R.D. at 566, and the validation notice was printed in bold text, both of which diminished the likelihood that an unsophisticated consumer would be confused by the letters. Here, however, the validation notice, which was printed in plain typeface, appeared on a separate page from the threat of legal proceedings and the acceleration of the annual assessment, neither of which made any reference to Plaintiffs' validation rights. Accordingly, the letter sent by H&J was more likely to confuse an unsophisticated consumer than the letter at issue in Jones.

14

"may" does not render it any less overshadowing. Notwithstanding the letter's equivocal language, an unsophisticated consumer reading the letter reasonably would fear additional consequences – namely, the commencement of legal proceedings or the acceleration of the annual assessment – if payment were not made within 30 days of the date of the letter. See Larsen, 533 F. Supp. 2d at 306 (dunning letter stating "[y]ou *may* be sued 30 days after the date of this notice if you do not make payment" violated FDCPA) (emphasis added); Bishop, 2003 WL 21497513, at *2-3 (dunning letter stated "[i]f the original amount of the check is not paid within thirty (30) days of the date of this letter, you *may* be subject to the following penalties") (emphasis added).[10]

  H&J also argues that "[p]ermitting Plaintiffs 30 days from the receipt of the letter to contest the validity of their debt and notifying them of the potential acceleration of annual assessment . . . if the debt is not paid are not mutually exclusive." (Def. Mem. at 8.) While that may be true, it is beside the point. H&J is certainly correct that a debt collector may demand immediate payment of a debt in a dunning letter. See Jacobson, 516 F.3d at 91. Such a demand, however, must not overshadow or contradict the validation notice. See id.; 15 U.S.C. § 1692g(b).[11] Debt collectors must tread carefully when making demands for immediate payment, because they "may cause confusion about

---

[10] This conclusion is buttressed by the fact that the "acceleration" portion of the letter was preceded by the following: "**NOTICE OF ACCELERATION OF ANNUAL ASSESSMENT**." As the Fifth Circuit has noted, a dunning letter "engages in overshadowing when . . . contradictory language is in 'screaming headlines.'" Peter, 310 F.3d at 349 n.2.

[11] In its Reply, H&J disingenuously cites only a portion of the 2006 amendments to the FDCPA to argue that a demand for payment during the 30-day validation period does not flout the statute. (See Reply at 4.) Immediately following the cited portion of the amendments, however, appears the following: "Any collection activities and communication during the 30-day period *may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt* . . . ." 15 U.S.C. § 1692g(b) (emphasis added).

the right to dispute, and will sometimes, in that way, lead debt collectors to run afoul of the Act." Jacobson, 516 F.3d at 91.  Accordingly, courts have held that a debt collector who demands immediate payment in a dunning letter typically must also explain "that its demand did not override the consumer's rights under Section [1692g] to seek validation of the debt," or else it will likely violate the statute.  Id. at 92 (citation omitted); accord Johnson v. Revenue Mgmt. Corp., 169 F.3d 1057, 1059 (7th Cir. 1999).  No such explanatory language is found in H&J's letter here.

Finally, although it is not entirely clear from its brief, H&J argues that it cannot be held liable under the FDCPA because it substantially complied with the statute.  (See Def. Mem. at 10 (citing Volden v. Innovative Fin. Sys., Inc., 440 F.3d 947, 956 (8th Cir. 2006), for the proposition that "no violation [exists] where [there was] substantial compliance with the debtor-creditor purpose of the FDCPA").)  Yet, the FDCPA is a strict liability statute, see Picht, 236 F.3d at 451, and the Court declines to read Volden as establishing a safe harbor any time a debt collector has "substantially complied" with the statute.[12]  Moreover, the holding in Volden was narrow; there, the debt collector allegedly violated the statute because it did not provide the debtor with the "precise statement" contained in 15 U.S.C. § 1692g(a)(1)-(5), even though it had provided an otherwise accurate validation notice.  The Eighth Circuit declined to find in the plaintiff's favor based on the defendant's "technical and meaningless" violation.  Here, however, H&J's violation was neither technical nor meaningless – it would have left an unsophisticated

---

[12] Notably, the statute contains an *express* safe harbor that applies only where the debt collector proves that (1) it did not engage in an intentional violation of the statute and (2) the violation resulted from a "bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  H&J nowhere argues that the statutory safe harbor should apply here.

consumer "scratching his [or her] head upon receipt of [its] letter." Sonmore v. Checkrite Recovery Servs., Inc., 187 F. Supp. 2d 1128, 1136 (D. Minn. 2001) (Alsop, J.). Accordingly, Volden cannot save H&J from liability.

For these reasons, the Court concludes that the letter sent by H&J to Plaintiffs violated the FDCPA as a matter of law. Accordingly, Plaintiffs are entitled to summary judgment in their favor on the issue of liability. That determination, however, begs a procedural question: where does this case go from here and, in particular, may this case now be prosecuted as a class action? The Court raised this question at oral argument, and Plaintiffs responded that class-action treatment is proper even if Plaintiffs first obtain judgment in their favor as to liability. H&J, on the other hand, asserted that the case would effectively be over if the Court ruled that the letter ran afoul of the statute and asserted that maintenance of this case as a class action would be improper under such circumstances. The Court agrees with H&J.

Federal Rule of Civil Procedure 23(c)(1)(A) requires a district court to determine "[a]t an early practicable time" whether a case should be certified as a class action. As the Eighth Circuit has noted, it is "rarely appropriate" for a district court to certify a class after a decision has been rendered on the merits. Paxton v. Union Nat'l Bank, 688 F.2d 552, 558 (8th Cir. 1982); accord Bieneman v. City of Chicago, 838 F.2d 962, 964 (7th Cir. 1988) (*per curiam*) (it is "difficult to imagine cases in which it is appropriate to defer class certification until after [a] decision on the merits"); see also Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 177-78 (1974) (noting that district courts should not allow named plaintiffs to "obtain a[n] [advance] determination on the merits without any

17

assurance that a class action may be maintained"). The reason for this is simple. When a named plaintiff seeks a ruling on the merits and then later seeks class certification, all potential class members are placed in a "win-win" situation: if the ruling goes against the named plaintiff, then others can "opt out" of the class and not be bound by that adverse decision, and if the ruling is favorable, then others can "opt in" to the class knowing that the defendant's liability has already been established. Such "one-way intervention" is to be avoided because it is inherently unfair to defendants. See Paxton, 688 F.2d at 558; In re Philip Morris, Inc., 214 F.3d 132, 134-35 (2d Cir. 2000); 6A Federal Procedure, Lawyer's Edition § 12:275, at 375 (2004 & Supp. 2007).

Here, no motion for class certification has been filed, and the issue has not been raised by Plaintiffs. H&J moved to dismiss the Complaint; Plaintiffs responded not by merely opposing that Motion or even by both opposing the Motion *and* seeking class certification, but rather opted to move for summary judgment as to H&J's liability. In the Court's view, Plaintiffs have waived any right they may have had to prosecute this case as a class action by jumping directly to a final determination of the merits of their case when there was no obligation for them to do so. See Kerkhof v. MCI WorldCom, Inc., 282 F.3d 44, 55 (1st Cir. 2002) (concluding that district court did not abuse its discretion in denying class-certification motion filed after named plaintiff moved for and was granted summary judgment). As a result, going forward Plaintiffs may obtain discovery

limited to the issue of damages to which *they* (and not the class they purported to represent) may be entitled.[13]

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that Defendant's Motion to Dismiss (Doc. No. 3) is **DENIED** and Plaintiff's Motion for Summary Judgment on Liability (Doc. No. 9) is **GRANTED**.

Date:  May 1, 2008

                                                    s/Richard H. Kyle
                                                    RICHARD H. KYLE
                                                    United States District Judge

---

[13] Plaintiffs conceded at oral argument that this is a statutory damages case (see 15 U.S.C. § 1692k(a)(2)(A)) and not a case involving any actual damages (see 15 U.S.C. § 1692k(a)(1)).  The factors bearing on an award of statutory damages are set forth in 15 U.S.C. § 1692k(b), and any discovery should be tailored to those factors.
     In addition, it is unclear whether a jury or the Court should determine whether Plaintiffs are entitled to statutory damages and, if so, the amount of those damages.  Compare Savino v. Computer Credit, Inc., 164 F.3d 81, 86 (2d Cir. 1998) ("The decision whether to award statutory damages under the FDCPA and the size of the award are matters committed to the sound discretion of the district court.") with Kobs v. Arrow Serv. Bureau, Inc., 134 F.3d 893, 898 (7th Cir. 1998) ("we hold that § 1692k(a)(2) of the FDCPA provides for trial by jury in determining statutory . . . damages").  The Court need not resolve that issue at this juncture.